IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


JULIET JAYNES,                                  10-CV-568-BR

          Plaintiff,                            OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

          Defendant.


DAVID B. LOWRY
9900 S.W. Greenburg Road
Columbia Business Center
Suite 130
Portland, OR 97223
(503) 245-6309

          Attorney for Plaintiff


1 - OPINION AND ORDER

**DWIGHT C. HOLTON**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053

**DAVID MORADO**
Regional Chief Counsel
**DAVID R. JOHNSON**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA  98104
(206) 615-2545

          Attorneys for Defendant


**BROWN, Judge.**

          Plaintiff Juliet Jaynes seeks judicial review of a final
decision of the Commissioner of the Social Security Admini-
stration (SSA) in which he denied Plaintiff's applications for
Supplemental Security Income (SSI) and Disability Insurance
Benefits (DIB) under Titles XVI and II of the Social Security
Act.  This Court has jurisdiction to review the Commissioner's
final decision pursuant to 42 U.S.C. § 405(g).

          For the reasons that follow, the Court **REVERSES** the decision
of the Commissioner and **REMANDS** this matter pursuant to sentence
four of 42 U.S.C. § 405(g) for further administrative proceedings
consistent with this Opinion and Order.

## ADMINISTRATIVE HISTORY

Plaintiff filed her application for SSI on August 19, 2005, and her application for DIB on August 24, 2005, and alleged a disability onset date of August 16, 2005.  Tr. 104, 110.[1]  The applications were denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on October 25, 2007.  Tr. 761-801.  At the hearing, Plaintiff was represented by an attorney.  Plaintiff, a lay witness, and a VE testified.

The ALJ issued a decision on April 16, 2008, in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 12-26.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on April 29, 2010, when the Appeals Council denied Plaintiff's request for review.

## BACKGROUND

Plaintiff was born on November 8, 1964, and was 42 years old at the time of the hearing.  Tr. 24.  Plaintiff obtained a GED. Tr. 149.  She has past relevant work experience as a baker's helper.  Tr. 24.

Plaintiff alleges disability due to a panic disorder, depression, anxiety, agoraphobia, fibromyalgia, and Raynaud's

---

[1]  Citations to the official transcript of record filed by the Commissioner on August 1, 2010, are referred to as "Tr."

disease.  Tr. 17-18.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 18, 21-23.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

**I.   The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful

activity.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the Commis-sioner determines the claimant does not have any medically severe impairment or combination of impairments.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe they preclude substantial gainful activity.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's Residual Functional Capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p,

at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not

disabled.   20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since her August 16, 2005, alleged onset date.  Tr. 17.

At Step Two, the ALJ found Plaintiff has the severe impairments of fibromyalgia or myofascial pain, depression, anxiety, panic attacks, and alcohol abuse.  Tr. 17.

At Step Three, the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 20.  The ALJ also found Plaintiff has the RFC to perform light work.  Tr. 20.  The ALJ further found Plaintiff has the RFC to sit one hour in an eight-hour work day and to stand/walk "one hour at a time" in an eight-hour work day.  Tr. 20.  The ALJ found Plaintiff needed to be able to stretch in place "for a minute or two" and was limited to simple, routine, repetitive work; occasional contact with large crowds of people; "occasional close supervision"; and occasional interaction with the public or coworkers.  Tr. 20.

At Step Four, the ALJ concluded Plaintiff is not capable of performing her past relevant work.  Tr. 24.

At Step Five, the ALJ found Plaintiff can perform jobs that

8 - OPINION AND ORDER

exist in significant numbers in the national economy.  Tr. 24-25.
Accordingly, the ALJ found Plaintiff is not disabled.


<u>**DISCUSSION**</u>

Plaintiff contends the ALJ erred (1) by improperly rejecting
the opinions of Plaintiff's treating physicians, (2) by
improperly rejecting lay-witness testimony, and (3) by finding
Plaintiff capable of performing jobs identified by the VE.

**I.   Medical opinion testimony.**

Plaintiff contends the ALJ erred when he improperly rejected
the opinions of treating physicians Jill Sheasley, D.O., and
Sheri Laird, M.D.

On June 29, 2004, Dr. Sheasley opined Plaintiff suffered
severe anxiety with panic attacks; had difficulty concentrating;
and, as a result, would miss four days of work per month and was
"incapable of even 'low stress' jobs." Tr. 616-22.  Similarly,
on October 24, 2007, Dr. Laird opined Plaintiff suffered from
"constant worrying/anxiety, episodes of severe depression, [and]
panic attacks," would miss four days of work per month, and was
"incapable of even 'low stress' jobs." Tr. 658-64.  The ALJ did
not give any weight to the opinions of Drs. Sheasley and Laird on
the ground that Plaintiff "has not pursued treatment for a
continuous period of 12 months or longer . . . [and Plaintiff]
has responded well when she has been treated." Tr. 22.  For

example, in November 2004 Dr. Sheasley reported Plaintiff's depression was "well controlled" with Effexor.  Tr. 295.  In February 2005, however, Dr. Laird reported Plaintiff "quit" taking Effexor and started "to feel worse with increased sadness and emotional lability."  Tr. 295.  Dr. Laird prescribed Paxil.  In May 2005 Dr. Laird reported Plaintiff's depression and anxiety were "stable on Paxil."  Tr. 291.  On May 3, 2005, Plaintiff requested to be able to return to group counseling with Clackamas County Mental Health, but she had not returned to any group sessions as of June 13, 2005.  Tr. 341.  Plaintiff resumed group sessions on June 28, 2005, but stopped going to those sessions in August 2005.  Tr. 339.  In November 2005 Dr. Laird reported Plaintiff was feeling better on Paxil.  Tr. 310.  On January 18, 2006, Dr. Laird noted Plaintiff stopped taking Paxil two weeks earlier, and she was suffering increased stress.  Tr. 683.  Dr. Laird prescribed Effexor.  Tr. 683.  On February 2, 2006, Dr. Laird noted Plaintiff resumed taking Effexor and was sleeping better and "crying less."  Tr. 682.  Dr. Laird recommended Plaintiff continue to take Effexor.  In June 2006 Plaintiff reported to Dr. Laird that her mood was stable and that she had begun to exercise.  Tr. 678.

In addition, the ALJ noted David Gostnell, Ph.D., examining psychiatrist, opined in December 2004 after conducting a neuropsychological evaluation of Plaintiff that Plaintiff could

perform work-related functions satisfactorily except for public

interactions.  Tr. 640-56.  Dr. Gostnell concluded Plaintiff's

> medical and psychiatric history and . . . current
> symptoms do not explain [Plaintiff's]
> neuropsychological test scores.  Although her
> anxiety and depression are likely to produce some
> degree of interference with cognitive performance,
> her scores seem disproportionate to expectations,
> given her educational background. . . .
> [A]lthough [Plaintiff] produced no obvious
> behavior signs of inadequate effort on the
> testing, some degree of motivational compromise
> cannot be ruled out without more thorough
> assessment, including the use of specific measures
> for this purpose.  Given the extent to which she
> is able to live semi-independently, her scores
> probably do underestimate her true abilities.

Tr. 648.

The Court concludes on this record that the ALJ did not err

when he rejected the opinions of Drs. Sheasley and Laird because

the ALJ provided legally sufficient reasons supported by the

record for doing so.

**II.  Lay-witness testimony**.

Plaintiff contends the ALJ erred when he rejected the lay-

witness testimony of David Root and the lay-witness statements of

Patricia and Charles Root and Laurie Baird, LCSW.

Lay testimony regarding a claimant's symptoms is competent

evidence that the ALJ must consider unless he "expressly

determines to disregard such testimony and gives reasons germane

to each witness for doing so."  *Lewis v. Apfel*, 236 F.3d 503, 511

(9th Cir. 2001).  *See also Merrill ex rel. Merrill v. Apfel*, 224

F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a
claimant's disability, must give full consideration to the
testimony of friends and family members.").

**A.    David, Patricia, and Charles Root.**

At the hearing David Root, Plaintiff's step-father,
testified Plaintiff has difficulty walking, fatigues easily, has
to rest for 15 minutes after vacuuming, can walk only four
blocks, suffers from anxiety, has episodes of crying, is
forgetful, and angers easily.  Tr. 790-93.  In an April 2005
written statement, Patricia Root, Plaintiff's mother, stated
Plaintiff has balance problems, is forgetful, has problems with
concentration, has anxiety attacks when in public places, and
suffers arm and leg weakness and swelling due to Raynaud's
Disease.  Tr. 137-43.  In an April 2005 written statement,
Charles Root, Plaintiff's brother, stated Plaintiff suffers panic
attacks in public places, can stand for ten to fifteen minutes,
and has trouble with concentration and forgetfulness.  Tr. 144-
50.

The ALJ found David Root's testimony and the statements
of Patricia and Charles Root were not "of assisant [*sic*] to me in
the evaluation of this claim because they have not provided
objective evidence in support of limitations beyond my assessment
of [Plaintiff's] physical and mental residual functional
capacity."  Tr. 23.  The ALJ also noted these witnesses "are not

12 - OPINION AND ORDER

expert in medical or vocational matters."  Tr. 24.

The Ninth Circuit has held an ALJ may not "discredit
. . . lay testimony [because it is] not supported by medical
evidence in the record." *Bruce v. Astrue*, 557 F.3d 1113, 1116
(9th Cir. 2009).  Similarly, an ALJ may not reject lay-witness
testimony based on lack of medical expertise.  *Id*.

The Court concludes on this record that the ALJ erred
when he rejected the lay-witness testimony and statements of
David, Patricia, and Charles Root because the ALJ did not give
reasons germane to each witness for doing so.

## B.  Laurie Baird, LCSW.

Plaintiff contends the ALJ erred when he rejected the
May 2005 opinion of Laurie Baird, LCSW, Plaintiff's counselor,
expressed in a check-the-box questionnaire.  Baird found
Plaintiff had marked restrictions in her activities of daily
living and in maintaining social functioning; frequent
deficiencies of concentration, persistence, or pace; and
"continual" episodes of deterioration or decompensation in work-
like settings.  Tr. 274.  Baird also opined Plaintiff would be
absent from work four days per month due to her symptoms.
Tr. 272.

Medical sources are divided into two categories:
"acceptable" and "not acceptable."  20 C.F.R. § 416.902.
Acceptable medical sources include licensed physicians and

13 - OPINION AND ORDER

psychologists.  20 C.F.R. § 416.902.  Medical sources classified

as "not acceptable" include licensed clinical social workers.

SSR 06-03p, at *2.  The Social Security Administration notes:

> [M]edical sources who are not acceptable medical
> sources, such as . . . licensed clinical social
> workers, have increasingly assumed a greater
> percentage of the treatment and evaluation
> functions previously handled primarily by
> physicians and psychologists.  Opinions from these
> medical sources . . . are important and should be
> evaluated on key issues such as impairment
> severity and functional effects, along with the
> other relevant evidence in the file.

SSR 06-03p, at *3.  Factors the ALJ should consider when

determining the weight to give an opinion from those "important"

sources include:  the length of time the source has known the

claimant and the number of times and frequency that the source

has seen the claimant; the consistency of the source's opinion

with other evidence in the record; the relevance of the source's

opinion; the quality of the source's explanation of his opinion;

and the source's training and expertise.  SSR 06-03p, at *4.  On

the basis of the particular facts and the above factors, the ALJ

may assign a not-acceptable medical source either greater or

lesser weight than that of an acceptable medical source.  SSR 06-

03p, at *5-*6.  The ALJ, however, must explain the weight

assigned to such sources to the extent that a claimant or

subsequent reviewer may follow the ALJ's reasoning.  SSR 06-03p,

at *6.

        The ALJ did not give any weight to Baird's opinion on

the grounds that the questionnaire was "not a form authorized by the Social Security Administration," Baird is not an acceptable medical source, and Plaintiff "has not followed consistent and prolonged treatment for any of her conditions and she has responded well when she has been treated."

As noted, even though Baird is not an acceptable medical source, opinions from unacceptable medical sources "are important and should be evaluated on key issues such as impairment severity and functional effects."  In addition, the Commissioner does not offer nor could this Court find any authority for the proposition that an ALJ may reject an unacceptable medical source's opinion because it is not on a specific form.  The ALJ's reasons, therefore, are not sufficient for rejecting Baird's opinion.  The ALJ, however, also relied on the fact that Plaintiff has not followed consistent and prolonged treatment for any of her conditions and that she has responded well when she has been treated as the ALJ noted in his discussion of the opinions of Drs. Sheasley and Laird.

The Court concludes on this record that the ALJ did not err because he provided legally sufficient reasons for rejecting Baird's opinion on the ground that Plaintiff has not followed consistent and prolonged treatment for any of her conditions and she has responded well when she has been treated.

**III. VE's testimony**.

Plaintiff contends the ALJ erred when he relied on the VE's testimony and concluded on that basis that Plaintiff was capable of performing other jobs in the national economy because the ALJ (1) failed to address evidence that Plaintiff submitted from the United States Departments of Labor and Commerce (USDOL) and the Oregon Employment Division in which, according to Plaintiff, those agencies indicated they do not track by DOT Code the numbers of jobs available and (2) did not include all of Plaintiff's limitations in the hypothetical to the VE.

**A.   Plaintiff's evidence from the USDOL and Oregon Employment Division.**

Plaintiff contends the ALJ erred when he failed to address evidence that Plaintiff submitted from the USDOL and the Oregon Employment Division in which those agencies indicated they do not track numbers of jobs available by DOT code.  The Ninth Circuit, however, has rejected similar arguments and concluded an ALJ may rely solely on the VE's testimony as to the number of jobs available in the national economy and does not have to address additional vocational materials submitted by a claimant. *See, e.g.*, *Howard v. Astrue*, 330 F. App'x 128 (9th Cir. 2009)(Letters "from the U.S. Department of Labor's Bureau of Labor Statistics, the U.S. Census Bureau, and the Oregon Employment Department establishing that none of these agencies gathers the precise information with respect to the availability

16 - OPINION AND ORDER

of jobs to which the VE testified and on which the ALJ and magistrate judge relied . . . submitted by [Plaintiff] did not provide 'significant probative evidence' regarding how many jobs were available in the local and national economies.  The ALJ properly relied on the VE's testimony for that information.");  *Crane v. Barnhart*, 224 F. App'x 574, 578 (9th Cir. 2007)(same).

        Accordingly, the Court concludes the ALJ did not err when he did not address Plaintiff's evidence from the USDOL and the Oregon Employment Division.

    **B.   Hypothetical to the VE.**

        Plaintiff also contends the ALJ erred because his hypothetical to the VE did not include Plaintiff's limitations as set out by the lay-witnesses.  Because the Court already has concluded the ALJ erred when he rejected the testimony and statements of David, Patricia, and Charles Root without providing reasons germane to each of these witnesses for doing so, the Court also concludes the ALJ erred when his hypothetical to the VE did not include these limitations.


                            **REMAND**

    The Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits.

    The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely

17 - OPINION AND ORDER

utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

On this record the Court concludes further proceedings are necessary. The Roots testified about various symptoms of Plaintiff, and the ALJ failed to provide legally sufficient reasons for rejecting that evidence. Nevertheless, the Court concludes it is not clear from the record that the ALJ would be required to find Plaintiff disabled if the testimony and statements of the Roots was credited because, as the ALJ noted, Plaintiff's symptoms improve when she consistently engages in

18 - OPINION AND ORDER

therapy and takes medication.

Accordingly, the Court remands this matter for further proceedings related to whether the ALJ must find Plaintiff to be disabled if the testimony and statements of the Roots were credited.


## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 29th day of April, 2011.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


19 - OPINION AND ORDER